UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL A. CRABTREE,

*Plaintiff*,

v.

BUFFALO GRAND HOTEL INC.,

*Defendant*.

Case No. 1:21-cv-02167 (ACR)

**MEMORANDUM OPINION**

Plaintiff Michael A. Crabtree, in his capacity as Chief Executive Officer[1] of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Pension Fund" or "Fund"), has sued Defendant Buffalo Grand Hotel Inc. under the Employee Retirement Income Security Act of 1975 ("ERISA"), 29 U.S.C. § 1002(3), *et seq.*, for failure to pay contributions owed. Dkt. 1 (Compl.) ¶ 1. Before the Court is Plaintiff's Motion for Entry of Judgment by Default under Federal Rule of Civil Procedure 55, which seeks (1) $20,417.48 in unpaid and delinquent contributions to the Fund, (2) $3,188.58 in interest on unpaid contributions, (3) $4,083.49 in liquidated damages, and (4) $9,718.00 in attorney's fees. Dkts. 20, 20-2. For the reasons that follow, the Court grants Plaintiff's Motion.

---

[1] Crabtree has since retired and Joseph J. Shelton has succeeded him as Chief Executive Officer. Dkt. 20-3 at 1 ¶ 2.

1

## I. BACKGROUND

### A. The Employee Retirement Income Security Act

Congress enacted § 1132(g) of ERISA to "preserve the private multi-employer pension plan system by ensuring that employers make the required contributions to the pension plans." *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 69-70 (D.D.C. 2002). The "preeminent purpose" of § 1132(g) is to "keep ERISA plans solvent," *Bd. of Trs. of the Hotel & Rest. Emps. Loc. 25 v. JPR, Inc.*, 136 F.3d 794, 805 (D.C. Cir. 1998), by "promot[ing] the prompt payment of contributions and assist[ing] plans in recovering the costs incurred in connection with delinquencies," *Flynn*, 237 F. Supp. 2d at 70 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Alco Express Co.*, 522 F. Supp. 919, 928 (E.D. Mich. 1981)). To that end, ERISA enables participants, beneficiaries, or fiduciaries of employee benefit plans to bring civil actions against "employers who are obligated to make contributions to . . . multiemployer plan[s]" to recover those contributions and other associated costs. 29 U.S.C § 1145.

### B. Factual Background

The Central Pension Fund is a D.C.-based multiemployer employee benefit plan as defined by ERISA. Compl. ¶ 1; 29 U.S.C. § 1002(3). Plaintiff is a designated fiduciary of the Fund. Compl. ¶ 1; 29 U.S.C. § 1002(21). The Central Pension Fund is financed by contributions from participating employers who have entered into collective bargaining agreements with local unions affiliated with the International Union of Operating Engineers. Compl. ¶ 1; Dkt. 20-3 (App.) at 10-16. Defendant entered into such agreements with the Fund beginning in July 2018 and was bound by one at all relevant times. App. at 10-16. The Fund is maintained in accordance with the terms of its Restated Agreements and Declarations of Trust ("Restated Agreements"). Compl. ¶ 1. The Restated Agreements require Defendant to make payments to

the Fund for each hour of covered work performed by Defendant's employees; failure to make payments incurs a nine percent interest fee and a twenty percent liquidated damages fee. Compl. ¶¶ 7, 10-11; App. at 5-8. Defendant is also liable for attorney's fees incurred in the enforcement of the Restated Agreement's provisions. App. at 8.

For certain months from July 2018 through January 2022, Defendant's employees performed work under the collective bargaining agreements, and Defendant failed to pay the required contributions. Compl. ¶¶ 8-9; App. at 10-16. From July 2018 onward, Defendant also failed to provide the requisite remittance reports, Compl. ¶ 15, which detail the names of employees, their Social Security numbers, each employee's earnings records, the number of hours worked by each employee, and all federal and state payroll tax returns, App. at 7. Defendant has submitted the reports since Plaintiff filed suit. Dkt. 20-1 at 4-5.

### C. Procedural History

Plaintiff, as a fiduciary of the Central Pension Fund, filed this suit on August 13, 2021. Compl. He served Defendant with process on September 3, 2021. Dkt. 5. Defendant failed to appear or file an answer and the Clerk of Court entered default against Defendant on December 14, 2021. Dkt. 7. Despite not appearing in the case, Defendant submitted some of the outstanding remittance reports in December 2021, and the parties entered extended settlement negotiations. Dkts. 9-19.

By December 2023, two years after the Clerk of Court entered default, the parties had yet to reach a settlement and Defendant still had not appeared. The Court therefore issued a Minute Order requiring Plaintiff to either move for default judgment or file a notice of voluntary dismissal by March 1, 2024. Min. Order (Dec. 21, 2023). Plaintiff moved for default judgment on February 29, 2024, Dkt. 20, and the time to oppose lapsed with nary a word from Defendant.

Plaintiff seeks the unpaid contributions, as well as interest, liquidated damages, and attorney's fees as set forth in the Restated Agreements.[2]

## II.     LEGAL STANDARD

"A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 66-67 (D.D.C. 2011) (citing *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980)).  While courts prefer to allow the adversarial process to play out, default judgment can be appropriate when a defendant has failed to put forth any defense or response. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).

There is a two-step procedure for entering default judgment.  First, a plaintiff requests that the Clerk of Court enter default against a defendant who has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).  Second, the plaintiff moves for entry of default judgment. Fed. R. Civ. P. 55(b).  This process "allows the defendant the opportunity to move the court to set aside the default before the court enters default judgment." *Fanning v. AMF Mech. Corp.*, 326 F.R.D. 11, 13 (D.D.C. 2018) (cleaned up).

Entry of default establishes the defendant's liability for the plaintiff's well-pleaded allegations. *Downs v. JSP Cos.*, 297 F. Supp. 3d. 163, 166 (D.D.C. 2018).  If a plaintiff establishes liability under ERISA, a court "shall" award (1) unpaid contributions, (2) interest on the unpaid contributions, (3) liquidated damages, and (4) reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2).

---

[2] Plaintiff's Complaint also requested an order requiring Defendant to submit all outstanding remittance reports, but Defendant has since submitted those reports to Plaintiff.  Compl. ¶ 16; Dkt. 20-1 at 4-5.

However, default "does not automatically establish liability in the amount claimed by the plaintiff." *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013). A court granting default judgment must make an "independent evaluation of the damages to be awarded," *Boland v. Smith & Rogers*, 201 F. Supp. 3d 144, 147 (D.D.C. 2016), and has "considerable latitude" in making such a determination, *Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d at 67. The plaintiff must prove requested damages "to a reasonable certainty," *id.* at 68, and may do so using affidavits or other documentary evidence, *Fanning*, 326 F.R.D. at 14.

### III.   ANALYSIS

The Court first explains why entry of default judgment is appropriate, and then turns to determining the appropriate damages award.

Default judgment is warranted because Plaintiff's Complaint adequately pleads a violation of ERISA and Defendant has failed to defend this case. ERISA requires that an "employer who is obligated to make contributions to a multiemployer plan . . . make such contributions in accordance with the terms and conditions of" the relevant agreements. 29 U.S.C § 1145. Plaintiff's Complaint sufficiently pleads (and his Motion attaches evidence) that Defendant was so obligated and has failed to make the requisite contributions. Compl.; App. (attaching evidence of agreements between the Fund and Defendant and evidence of breaches of those agreements). Therefore, Plaintiff's well-pleaded allegations, which the Court accepts as true because Defendant is in default, *see, e.g.*, *Fanning*, 326 F.R.D. at 14, make out a violation of 29 U.S.C. § 1145. And Defendant has "fail[ed] to defend [this] case appropriately." *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 66. Defendant is clearly aware of this case: it was served with process in September 2021 and has since engaged in settlement negotiations with Plaintiff. Dkts. 9-19; *see Boland v. Hetrick*, 277 F. Supp. 3d 112, 117 (D.D.C. 2017) (finding that that the

5

defendant's engagement in settlement discussions evidenced the defendant's awareness of the proceedings); *Boland v. Yoccabel Constr. Co.*, 293 F.R.D. 13, 17 (D.D.C. 2013) (same). Yet Defendant has, for years, failed to appear. Default judgment is appropriate.

The Court now turns to the calculation of appropriate award. Plaintiff seeks a total of $37,407.55, which, for the following reasons, the Court grants in full.

First, Plaintiff's exhibits in support of his Motion prove with reasonable certainty that Defendant owes $27,689.55 in unpaid contributions, interest, and liquidated damages. The unpaid contributions, calculated based on Defendant's remittance reports, total $20,417.48. App. at 2-3. As noted above, the Restated Agreements set the interest owed on unpaid contributions at nine percent annually, which comes to $3,188.58. *Id.* at 3, 8, 20. Defendant is also liable for liquidated damages equal to twenty percent of the unpaid contributions, or $4,083.49.[3] *See* Compl. ¶ 10; App. at 3, 8, 20; *see also* 29 U.S.C. §1132(g).

Second, the Court finds Plaintiff's request for $9,718.00 in attorney's fees and costs reasonable. As to fees, reasonableness is a judgment call to be determined by the Court, but courts generally decline to engage in "nitpicking." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 825 F. Supp. 2d 226, 229 (D.D.C. 2011); *see* 29 U.S.C. § 1132(g); *Flynn*, 237 F. Supp. 2d at 70. Plaintiff requests $9,066 for 27.8 hours of attorney work. App. at 24-26. The Restated Agreements provide that the Fund can recover for attorney's fees incurred in the enforcement of its provisions. *Id.* at 8. The parties negotiated a fee of $320 per hour through March 31, 2022; $330 per hour through March 31, 2023; and $340 per hour from April 1, 2024,

---

[3] Twenty percent is the maximum award allowed by statute for liquidated damages. 29 U.S.C. § 1132(g). Courts have regularly authorized a twenty percent rate for liquidated damages when it is consistent with the relevant collective bargaining agreements. *Flynn* 237 F. Supp. at 69; *Fanning*, 326 F.R.D. at 15; *Hetrick*, 277 F. Supp. 3d at 120.

through the present for attorney work. *Id.* at 22. These fees are significantly lower than those laid out in the *Laffey* matrix, which provides a "sample of rates charged by sophisticated federal-court practitioners in the District of Columbia." *DL v. District of Columbia*, 924 F. 3d 585, 587 (D.C. Cir. 2019); s*ee* App. at 22; *Laffey Matrix*, http://www.laffeymatrix.com/see.html [https://perma.cc/H8A6-P7N3]; *see also Hetrick*, 277 F. Supp. 3d at 121 (finding that attorney's fees were reasonable because rate charged was substantially below rate established in *Laffey* matrix). Additionally, Plaintiff has provided an accounting of the incurred hours that demonstrates that the requested amount is reasonable. *See* App. at 24-26. So too are Plaintiff's requested costs, which comprise a $402 filing fee and a $250 fee for service of process. *Id.* at 22; *see, e.g.*, *Elite Terrazzo*, 763 F. Supp. 2d at 69 (awarding similar costs). The Court therefore awards the full amount requested by Plaintiff.[4]

### IV.  CONCLUSION

For these reasons, the Court grants Plaintiff's Motion for Entry of Judgment by Default, Dkt. 20, and awards $20,417.48 in unpaid and delinquent contributions; (b) $3,188.58 in interest; (c) $4,083.49 in liquidated damages; and (d) $9,718.00 in attorney's fees and costs, as well as post-judgment interest at the statutory rate set by 28 U.S.C. § 1961. The Court has entered an appropriate Order and Judgment.

Date:  June 6, 2024

                                          ANA C. REYES
                                          United States District Judge

---

[4] Plaintiff also requests, and the Court awards, post-judgment interest at the statutory rate set by 28 U.S.C. § 1961. *See, e.g.*, *Crabtree v. Island Breeze Marine, Inc.*, No. 18-cv-1054, 2019 WL 2569662, at *6-7 (D.D.C. June 21, 2019) (awarding post-judgment interest in ERISA case).